UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CANDACE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:04CV1140MLM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart ("Defendant") denying the applications for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq., filed by Plaintiff Candace Williams ("Plaintiff"). Plaintiff has filed a brief in support of her complaint. Doc.14. Defendant has filed a brief in support of her answer. Doc.15. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 7.

### I.
### PROCEDURAL HISTORY

On July 1, 2001, Plaintiff filed applications for disability benefits under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI of the Act, alleging disability since the date of April 1, 2002. (Tr. 37-40, 154-57). The applications were denied. (Tr. 31-34). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Thomas C. Muldoon on January 9, 2004. (Tr. 163-180).

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The ALJ found that Plaintiff was not disabled at anytime though the date of the decision, March 11, 2004. (Tr. 13-22). Plaintiff filed a timely request for review with the Appeals Council which denied Plaintiff's request on July 9, 2004. (Tr. 3-5). In denying the Plaintiff's request for review, the decision of the ALJ became the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

Plaintiff testified that at the time of the hearing she was forty-five years old and lived alone; that she is right-handed; that in the beginning of November 2003 she weighed 289 pounds; and that at some point between April 2002 and November that she was ten pounds heavier. (Tr. 166-67). Plaintiff testified that she has a GED and probably twelve hours of college credit. (Tr. 167).

Plaintiff testified that she believed that she could not work because she had the following: systemic lupus erythematosus[1], rheumatoid arthritis overlap syndrome, a bone-degenerative disease, asthma, bronchitis, hiatal hernia, and high blood pressure. (Tr. 167-68). Plaintiff further testified that she has problems with insomnia, irritable bowel syndrome, and back pain. (Tr. 177).

Plaintiff further testified that she last worked in April 2002 as a home health aide, which she had done since 1996, and that she stopped working as a home health aide because these conditions became worse and because she injured her back and elbows on the job. (Tr. 167, 178). Plaintiff stated that she did not receive worker's compensation for the injuries which she sustained on the job. (Tr. 178).

Plaintiff testified that because of her lupus she has skin lesions; that using her hands hurts because she has lesions on her fingers; that she uses a creme on the lesions; and that the lesions keep

---

[1]       Systemic erythematosus is an inflammatory connective tissue disease with variable features, frequently including fever, weakness and fatigability, joint pains or arthritis resembling rheumatoid arthritis, diffuse erythematosus, and skin lesions on the face, neck, or upper extremities. Stedman's Medical Dictionary 1037 (27th ed. 2000) ("Stedman's").

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

coming back. (Tr. 168). Plaintiff testified that she visited the emergency room during the summer of 2002 for asthma and that she has not been hospitalized since that time. (Tr. 169). Plaintiff further testified that she uses a bronchodilator, Albuterol,[2] three to four times at night each week, and that she takes Advair[3] twice a day. (Tr. 169). Plaintiff said she takes medication for irritable bowel syndrome and a muscle relaxant for back pain and that the muscle relaxant also helps her sleep. (Tr. 177). Plaintiff stated that she has problems with her asthma when it is cold, hot, wet, rainy, humid, or dusty and that she has problems with household cleaners and perfumes. (Tr. 170).

Plaintiff testified that she has pain everyday from inflammation and swelling; that she has swelling and pain independent of activity; that she has problems with her wrists and hands; that her arm does not turn out from the shoulder socket; that her hand does not turn "straight palm up; and that she has pain in both arms and her back. (Tr. 170-72, 174).

Plaintiff further testified that she does not drive a car; that she tried to get a driver's licence about six times; that the last time she tried to get a license, she was having problems with her right foot, which does not flex all the way; and that she had these foot problems in 1996. (Tr. 173). Plaintiff said that she has difficulty walking because of pain; and that some days she cannot walk much; that on a good day she can walk two blocks. (Tr. 173-74). Plaintiff stated that if she stands for more than ten minutes that she has increased pain in her knees, back and feet; that if she sits for extended periods of time she has pain in her knees, back and hip; and that when she sits she uses pillows so her knees are not too far bent, or she sits in a straight-back chair with a higher seat so that her knees are not in a bent position. (Tr. 175).

---

[2]     Albuterol is a sympathomimetic bronchodilator. Stedman's at 42.

[3]     Advair is used to treat asthma. Physician's Desk Reference ("PDR") 1387 (59th ed. 2005).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff also testified that she goes to a friend's house; that her friend takes her to the grocery store; that she goes to the doctor; that she visited her mother four times in 2003; that she usually does not go anywhere unless she is in a car; and that she sometimes takes the bus. (Tr. 173, 175). Plaintiff testified that she washes dishes, cooks, does the laundry, makes the bed, and sometimes cleans the house and that she had to make changes in how she did these activities. (Tr. 176-77).

Plaintiff stated that her current source of income is her late husband's pension plan ($54.71 per month) and food stamps ($141) and that she receives Medicaid. (Tr. 179). Plaintiff said that she also borrows from friends and family. (Tr. 179).

## III.
## MEDICAL RECORDS

Records of St. Louis County Health reflect on May 2, 2000, Plaintiff presented to Family Mental Health. G. Robinson, Ph.D., reported that Plaintiff's diagnosis on this date was as follows: at Axis I, major depressive disorder, alcohol dependence, and occupational problems; at Axis III, lupus, rheumatoid arthritis, hiatal hernia, and bronchitis; at Axis IV, "physical/economic stress, employment conflict/stress"; and at Axis V, a GAF of 50.[4] Dr. Robinson recommended that Plaintiff have individual therapy with Kathy Smith, M.S.W., on a weekly basis. (Tr. 91).

On May 4, 2000, Ms. Smith recommended that Plaintiff be referred for psychiatric evaluation and stated that Plaintiff did not have a great deal of insight into her emotional responses. (Tr. 89).

---

[4] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairment due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms of functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," and scores of 61 to 70 represent "mild." Id. at 32. Scores of 90 or higher represent absent or minimal symptoms or impairment. Id. at 32.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Pursuant to a conference held on September 12, 2000, Vivian Krupp, Ph.D., diagnosed Plaintiff as follows: at Axis I, major depression, single episode-severe, alcohol and cocain dependence, in full remission, and occupational problems; at Axis II, "rule out borderline personality disorder"; at Axis II, lupus, rheumatoid arthritis, hiatal hernia, and bronchitis; at Axis IV, "physical and economic stress, employment conflict/stress"; and at Axis V, a GAF of 50. (Tr. 92). Dr. Krupp noted on this date that Plaintiff's mood and grooming had improved; that she had shown some improvement when taking medication; that Plaintiff did not acknowledge the gains; that Plaintiff had not taken responsibility for her part in her problems; that Plaintiff had received therapy and medication management; and that she was being seen bi-weekly by a counselor and monthly by a medical doctor. (Tr. 92).

Records of St. Louis County Health, signed by John Lautenschlager, M.D., reflect that Plaintiff was seen on January 31, 2002, for rheumatoid arthritis and lupus. (Tr. 93). Records of St. Louis County Health, dated April 25, 2002, state that Plaintiff injured her back on April 1, 2002, when moving a chair. (Tr. 94). Records of St. Louis County Health, signed by Dr. Lautenschlager, and dated May 16, 2002, reflect that Plaintiff was prescribed Celexa for depression and that she was being followed by Ms. Smith. (Tr. 96). Dr. Lautenschlager reported on August 5, 2002, regarding Plaintiff's negative pap smear; on August 22, 2002, that Plaintiff was prescribed medication for depression and asthma; and on August 29, 2002, that Plaintiff was to schedule an appointment for asthma education. (Tr. 99-100).

Thomas Davant Johns, Ph.D., reported that he conducted a psychological evaluation of Plaintiff on September 4, 2002. (Tr. 107-12). Dr. Johns noted that Plaintiff reported that she last worked as a home health worker in April 2002; that she came to the clinic on that day on a bus; that the severity of her depression was "5/10, with 10 being suicidal"; that she had two prior suicide attempts; that she was currently "back on alcohol" which she had not used for three years; that she

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

last used marijuana twenty years earlier; and that she was prescribed Celexa[5], which she stopped using because it made her ill. (Tr. 107-108). Dr. Johns reported a mental status examination showed that Plaintiff was obese, well groomed, wearing appropriate make-up, moderately to minimally cooperative, vague and evasive in her reporting, especially alcohol and drugs; that her motor activity was within normal limits; that her social functioning was intact; that she denied interpersonal difficulties in work-like settings; and that due to depression, Plaintiff would be mildly to moderately impaired in her ability to complete tasks in a timely manner over a sustained period of time. (Tr. 110-111). Dr. Johns diagnosed Plaintiff as follows: at Axis I, depressive disorder not otherwise specified, currently moderate with re-institution of psychotropic medication, alcohol abuse, and "cocaine abuse if not dependence in sustained full remission by patient report"; at Axis III, "SLE, RA, 'degenerative bone disease,' hiatal hernia, IBS, arthritis, back pain"; at Axis IV, chronic health problems, unemployment, current litigation; and at Axis V, a GAF of 55. (Tr. 112).

Plaintiff was examined by Dr. Llewellyn Sale, Jr., M.D. on September 4, 2002. (Tr. 113). Dr. Sale's report states that Plaintiff was sixty-five and a quarter inches in height, weighed two hundred and eighty-one (281) pounds, was morbidly obese, and had blood pressure of 140/80. Dr. Sale further reported that Plaintiff stated that she did some light housework, occasionally shopped for groceries, cooked, dressed herself, and did "other things necessary." (Tr. 114). Dr. Sale reported that physical examination showed that Plaintiff's lungs were clear to percussion and auscultation; that her heart did not murmur; that her back had slight tenderness in the cervical and lumbar areas without muscle spasm; that she did not have joint abnormality; that she had decreased range of motion of the shoulders, knees, hips and lumbar spine; that her gait was normal without an assistive device; that her

---

[5]      Celexa is an orally administered selective serotonin reuptake inhibitor (SSRI) with a chemical structure unrelated to other available antidepressant agents. PDR at 258.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

squatting was about fifty percent; that the muscle strength of the major muscle groups of the upper and lower extremities was "5/5" and her hand grip strength was "4/5"; and that Plaintiff was not in any distress. (Tr. 115). Dr. Sale noted that Plaintiff had been diagnosed with systemic lupus, rheumatoid arthritis and overlap syndrome since 1990, which were treated with Prednisone[6] and Plaquenil[7]; that Plaintiff alleged that she had degenerative bone disease and a history of hiatal hernia and irritable bowl syndrome; and that Plaintiff's restricted range of motion may also be attributed to obesity. (Tr. 115). Dr. Sale also reported that Plaintiff's breathing problems "seem[ed] to be primarily bronchitis and/or asthma"; that she had "low back pain due to strain or sprain of 15 or more years duration"; that she had morbid obesity and a history of one episode of major depression and remote poly substance abuse. (Tr. 116).

Ricardo C. Moreno, Psy.D., completed a Psychiatric Review Technique form on September 16, 2002. (Tr. 120). Dr. Moreno reported on this form that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 130). In a Mental Residual Functional Capacity Assessment Dr. Moreno also reported that Plaintiff was moderately limited in her ability to do the following: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities with a schedule, maintain regular attendance, and be punctual with customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from

---

[6]    Prednisone inhibits the proliferation of lymphocytes. Stedman's at 437.

[7]    Plaquenil possesses antimalarial actions and also exerts a beneficial effect in lupus erythematosus and acute or chronic rheumatoid arthritis. PDR at 3008.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. 134-35).  Dr. Moreno noted that Plaintiff will experience some difficulty in situations involving understanding and memory, sustained concentration and persistence, and general adaptation.  (Tr. 136).  Dr. Moreno further noted that Plaintiff can understand, remember, and carry out and persist at simple tasks, make simple work-related judgments, relate adequately to co-workers and supervisors, and adjust adequately to ordinary changes in work routine and setting.  (Tr. 136).  Dr. Moreno also stated that the Plaintiff is partially credible.  (Tr. 136).

On August 7, 2002, Plaintiff's feet were examined by Dominic S. Francisco, M.D.  (Tr. 105). Dr. Francisco noted Plaintiff's history of rheumatoid arthritis.  (Tr. 105).  Dr. Francisco stated in a radiology report that there was no evidence of fracture, dislocation, bone production, or destruction in either of Plaintiff's feet.  His impression of both of Plaintiff's feet was negative. (Tr. 105).

It is reported in a September 25, 2002,  Physical Residual Functional Capacity ("RFC") Assessment that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, sit (with normal breaks) for a total of about six hours in an eight-hour workday, and that she was unlimited in terms of push and/or pull (including operation of hand and/or foot controls), other than as shown for lift and/or carry.  (Tr. 139).  The Physical RFC Assessment further states that Plaintiff is occasionally limited in stooping and crouching due to problems with squatting.  (Tr. 140). It was noted that Plaintiff's symptoms are attributable to low back pain and obesity; that the severity of her condition and its duration is "consistent with MER in file"; that Plaintiff is able to do light

housework, grocery shopping, and cooking; and that Plaintiff's allegations were fully credible. (Tr. 143).

A report from a radiology consultation of June 17, 2003, states that standard examination of Plaintiff's upper gastrointestinal tract showed no abnormality of the esophagus and no evidence of hiatus hernia; that the mucosal folds of the stomach appeared normal; and that the gastric emptying was "essentially within normal limits. The impression was "normal upper gastrointestinal series." (Tr. 147).

On October 20, 2003, John Lautenschlager, M.D., stated in a letter that Plaintiff was under his care as a patient since 1996; that he had been "treating her for chronic medical conditions which have left her disabled and unable to pursue gainful employment"; and that Plaintiff's disabling medical conditions are well-documented by medical testing. (Tr. 149). Dr. Lautenschlager's statement was attested to by a social worker at Pine Lawn Health Center. (Tr. 149).

## IV.
## DETERMINATION OF THE ALJ

The ALJ found that Plaintiff had not been under a "disability" as defined at any time through the date of the decision and that the preponderance of the medical and other evidence was inconsistent with the Plaintiff's alleged disability. (Tr. 17-18). The ALJ further found that the medical evidence did not establish any impairment or combination of impairments that met or equaled in severity the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18). The ALJ stated that obesity, despite being a medically-determined impairment, is no longer considered a separate impairment that can qualify one for disability under its own Appendix 1 listing. (Tr. 18). The ALJ further found Plaintiff's allegations not credible as her testimony was deemed highly exaggerated and inconsistent with the preponderance of the medical evidence in the records. (Tr. 20).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The ALJ further found that there was no evidence of Plaintiff having a mental impairment that met the criteria of any impairment listed in Sections 12.02-12.10 of Appendix 1, pursuant to the mental impairment evaluation required by 20 C.F.R. § 404.1520(a) and 20 C.F.R. § 416.920(a). (Tr. 21). The ALJ determined that Plaintiff had no more than a minimal limitation in her ability to do basic work activities with regard to mental functioning. (Tr. 21).

The ALJ found that even if Plaintiff's job as a home health aide required too much exertion or that Plaintiff had additional non-exertional limitations that precluded her return to this work, she could still do a full range of "other work" at a light exertional level. (Tr. 21).

The ALJ concluded that the medical evidence established that Plaintiff has severe obesity, systemic lupus erythematosus, asthma controlled by medication, a depressive disorder not otherwise specified but controllable by medication, but no impairment or combination of impairments that met in severity the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 21-22).

## V.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § § 416.920, 404.1529. In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. See 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. See 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. See 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. See 20 C.F.R. § § 416.920(e), 404.1520(e). The ALJ will "review [claimants]' residual functional capacity and the physical and mental demands of the work [claimant] [has] done in the past." Id. Fifth, the severe impairment must prevent claimant from doing any other work. See 20 C.F.R. § § 416.920(f), 404.1520(f). If the claimant meets these standards, the ALJ will find the claimant to be disabled.

The ALJ's decision is conclusive upon this court if it is supported by "substantial evidence." See Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

See Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." See 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). The plaintiff has the burden of proving that he has a disabling impairment. See 42 U.S.C. § 423(d)(1); Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993); Roach v. Sullivan, 758 F. Supp. 1301, 1306 (E.D. Mo. 1991).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

See Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See id.; Cruse, 867 F.2d at 1186.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  See  Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 849 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence.  See Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 426 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski factor."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  The ALJ need only acknowledge and consider those factors.  See id.   Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Where the ALJ holds that the plaintiff cannot return to his past relevant work, the burden shifts to the Commissioner to show other work that the plaintiff could perform in the national economy.  See Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc).  This is a two-part burden.  The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work.  Id. Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments.  See 20 C.F.R. § 404.1545(b-e).  The Commissioner has to prove this by substantial evidence.  See Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used.  An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible.  See Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985).  Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons.  See Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## VI.
## DISCUSSION

As stated above, the issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled.  See Onstead, 962 F.2d at 804.  The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commissioner's findings from being supported by substantial evidence.  See Browning v. Sullivan, 958 F.2d 817, 821 (9th Cir. 1991).  Thus, even if there is substantial evidence which would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position.  See Jones v. Chater, 86 F.3d 823, 826 (9th Cir. 1996).

Plaintiff argues that the ALJ's decision regarding Plaintiff's RFC is not supported by substantial evidence;  that the ALJ's determination of Plaintiff's RFC is not consistent with Singh v. Apfel, 222 F.3d 451 (8th Cir. 2000), and Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001); that the ALJ did not cite medical evidence of record upon reaching his conclusion that Plaintiff is not disabled; and that the ALJ did not give proper weight to Plaintiff's treating doctor, Dr. Lautenschlager.  Plaintiff

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

further contends that the ALJ did not follow the Regulations upon determining that Plaintiff had no mental limitations and that he did not properly develop the record in this regard. Additionally, Plaintiff contends that the ALJ improperly assessed Plaintiff's subjective complaints pursuant to Polaski.

## A. ALJ's Consideration of the Medical Evidence:

Plaintiff argues that the ALJ did not give proper weight to the opinion stated by Plaintiff's treating doctor, Dr. Lautenschlager, that she is unable to work. The opinions and findings of the plaintiff's treating physician are entitled to considerable weight. Indeed, if they are not controverted by substantial medical or other evidence, they are binding. See Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. See Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1985) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. See Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlain, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424).

Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. See Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

consulting physician where the treating physician's statements were conclusory in nature."). <u>See</u> <u>also</u> Chamberlain, 47 F.3d at 1494; <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing <u>Thomas v. Sullivan</u>, 928 F.2d 255, 259 (8th Cir. 1991)); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence). On the other hand, a treating physician's observations should not necessarily be treated as conclusory where the doctor had "numerous examinations and hospital visits" with a claimant. <u>See</u> <u>Turpin v. Bowen</u>, 813 F.2d 165, 171 (8th Cir. 1987).

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, at *2 (S.S.A. July 2, 1996). Additionally, SSR 96-2p clarifies that 20 C.F.R. § § 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." <u>Id.</u> at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. <u>Wilson v. Apfel</u>, 172 F.3d 539, 542 (8th Cir. 1999) (quoting <u>Cruze v. Chater</u>, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). In <u>Ward</u>, 786 F.2d at 846, upon finding that the ALJ properly discounted the opinion of a treating doctor, the Eighth Circuit noted that the reports from consulting physicians were detailed and thorough and that neither of the consulting physicians found evidence

17

of disease as alleged by the claimant. See id. at 847. The court found that the treating physician's conclusions were discredited by the conclusory nature of the physician's opinion regarding the severity of the disability and the contradictory medical evidence in the record. See id.

In the matter under consideration, Dr. Lautenschlager opined in his letter of October 2003 that the chronic medical conditions for which he treated Plaintiff since 1996 render her disabled and unable to pursue gainful employment. First, the court notes that such a conclusory statement by Plaintiff's treating doctor is not controlling where it is not supported by the record. See Ward, 786 F.2d at 846. Dr. Lautenschlager further stated in this letter that Plaintiff's medical conditions were well-documented by medical testing. Dr. Lautenschlager, however, did not cite to what medical testing he was referring. Indeed, his notes from 2002 do not reflect nor address any such testing. As stated by the ALJ, although Dr. Lautenschlager listed diagnosis of arthritis and lupus in 2002 his records do not indicate upon what he based this diagnosis. As such, the record does not establish that Dr. Lautenschlager based his opinion on medically accepted clinical or diagnostic data. See Veal, 833 F.2d at 699.

Dr. Sale, who conducted a physical examination of Plaintiff, reported that Plaintiff told him that she was diagnosed with systemic lupus in 1991; that she has degenerative bone disease; that she was diagnosed with hiatal hernia in 2000; that she was told she had irritable bowel syndrome; that she had asthma; that she had back pain; and that she had one episode of major depression. Dr. Sale reported, however, that his examination showed that Plaintiff was morbidly obese; that Plaintiff's lungs were clear; that her heart did not murmur; that she had no muscle spasm in her back; that her gait was normal; that her muscle strength in her extremities was 5/5; and that she was not in distress. Dr. Francisco, who also examined Plaintiff in August 2002, stated in a radiology report that his

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

impression of both of Plaintiff's feet was negative. Additionally, a radiology report of June 2003 states that Plaintiff had no abnormality of the upper gastrointestinal tract.

The ALJ considered that Plaintiff's blood pressure was virtually normal at 140/80. The court notes that Plaintiff's blood pressure was 128/90 in March 2001 and that it was 136/80 and 140/80 on two other occasions in March 2001. (Tr. 282). See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (holding that a high blood pressure reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure which measures within the range of 140-180/90-115 is considered mild or moderate, and that hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney). Thus, the court finds that the clinical data is not consistent with Dr. Lautenschlager's opinion and that, as such, his opinion is not binding on the ALJ. See SSR 96-2p; Veal, 833 F.2d at 699.

The ALJ also considered that although Plaintiff was diagnosed with obesity, she did not have signs of acute heart or lung disease or of peripheral vascular disease and her blood pressure was within normal range, although what is normal varies somewhat among individuals. 20 C.F.R.,Pt. 404, Subpt. P, App. 1, I, states that when determining "whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity." Social Security Ruling ("SSR") 02-01p, 2000 WL 628049, at *4 (Sept. 12, 2002), directs an ALJ to "do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." Thus, the ALJ's consideration of Plaintiff's obesity is consistent with the Regulations.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In regard to Plaintiff's alleged mental impairment, 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. See 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

The mere existence of a mental condition, however, is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). Where a claimant's mental or emotional problems do not result in a marked restriction of his daily activities, constriction of interests, deterioration of personal habits, or impaired ability to relate, they are not disabling. See Gavin v. Heckler, 811 F.2d 1195, 1198 (8th Cir. 1987). See also 20 C.F.R. § § 404.1520a and 416.920a.

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. See 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. See 20 C.F.R. § 404.1520a(c)(3). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. See 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning, and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." See 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When the degree of limitation in the first three functional areas is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

The court further notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

In the matter under consideration, upon finding that Plaintiff did not suffer from a mental disability, the ALJ considered the medical evidence as required by the first step of a mental impairment analysis. See Pratt, 956 F.2d at 835; 20 C.F.R. §§ 404.1520a(b)(1), 404.1508. In particular, the ALJ considered that although Plaintiff saw mental health professionals in 2000, there is no documented evidence that she received treatment at a mental health clinic after that date. Significantly, Plaintiff's alleged onset date is in July 2002. Thus, the record does not reflect that

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff received treatment from a mental health professional other than several years prior to her alleged onset date. Failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain. See Rautio, 862 F.2d at 179. Moreover, seeking limited medical treatment is inconsistent with claims of disability. See Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

Further the ALJ considered that Plaintiff's abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have never been impaired on a long term basis. Significantly, Dr. Sale noted that Plaintiff reported only one episode of major depression. Ms. Smith did report in May 2000 that Plaintiff had major depression, single episode. 20 C.F.R. § 414.909 states, however, that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." The ALJ also considered that there was no documented serious deterioration in Plaintiff's personal hygiene or habits, daily activities or interests, effective intelligence, reality contact, thought process, insight, judgment, or behavior patterns over any extended period of time. This is consistent with the requirement of § 404.1520(a), that after considering the medical evidence, the ALJ proceeded to consider a claimant's functional limitations. Further, the court notes that a Physical RFC Assessment of September 2002 states that Plaintiff is able to do light housework, grocery shopping, and cooking. Additionally, Plaintiff testified at the hearing that she goes to the grocery store, that she takes the bus, and that she washes dishes, cooks, does laundry, makes the bed, and sometimes cleans the house.

Further the ALJ considered that during the hearing Plaintiff had no obvious signs of depression, anxiety, memory loss, or other mental disturbances. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward, 786 F.2d at 847-48, the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

ALJ's observations of a claimant's demeanor during the hearing is a consideration. See Villarreal v. Secretary of Health & Human Services, 818 F.2d 461, 463 (6th Cir. 1987) (holding that given his opportunity to observe the claimant, the ALJ's conclusions regarding plaintiff's credibility should not be discarded lightly).

Additionally, records of St. Louis County Health with which Dr. Lautenschlager is affiliated, also reflect that in May 2000 Plaintiff had physical/economic stress and employment conflict/stress. Situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Also, a claimant's daily activities can support a conclusion that depression is situational due to temporary circumstances. See id. at 1039. Moreover, as noted by the ALJ, in September 2000 it was reported by Dr. Krupp that Plaintiff's mood and grooming had improved; that Plaintiff had received medication and therapy; and that Plaintiff did not acknowledge her gains. Conditions which can be controlled by treatment are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450.

To the extent that the ALJ did not address all areas specified in the Regulations in regard to Plaintiff's alleged mental impairment, the court notes that Dr. Moreno completed a Psychiatric Review Technique form which rated Plaintiff's functional limitations in the areas specified by the Regulations. Dr. Moreno found Plaintiff only moderately limited in three areas of functioning and that she had no limitations in regard to repeated episodes of decompensation. In a Mental Residual Functional Capacity Assessment Dr. Moreno reported that Plaintiff was not significantly limited in

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

nine areas; that she was moderately limited in eleven areas; and that she did not have marked limitations in any category. The court finds, therefore, that the ALJ's consideration of Plaintiff's alleged mental disability is consistent with the Regulations.

Based on the foregoing, the court finds that substantial evidence on the record supports the ALJ's conclusion that none of Plaintiff's impairments or the combination of Plaintiff's alleged physical and mental impairments meet or equal the severity requirements of the Listings. The court further finds, contrary to Plaintiff's assertion, that the ALJ did cite medical records to support his conclusion in this regard. The ALJ did consider, as stated above, the records of St. Louis County Health, including Dr. Lautenschlager's notes, and the reports from consultive examinations by Dr. Sale and Dr. Johns. To the extent that the ALJ did not specifically refer to certain medical records relevant to Plaintiff's alleged disabling physical and mental conditions, an omission does not require a court to set aside an administrative finding when that omission had no bearing on the outcome. Also, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. See Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (Wheeler) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted ... [and][a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal citations omitted); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995) (Montgomery); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) ("Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence.") (citing Carlson v. Chater, 74 F.3d 869 (8th Cir. 1996)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The court further finds that the medical evidence of record, including Dr. Lautenschlager's own records, does not support Dr. Lautenschlager's conclusion that Plaintiff is unable to engage in substantial gainful employment. Rather, substantial medical evidence controverts Dr. Lautenschlager's conclusion. See Cunningham, 222 F.3d at 502. The court further finds, therefore, that the ALJ was not required to give controlling weight to Dr. Lautenschlager's conclusion regarding Plaintiff's ability to work. See Chamberlain, 47 F.3d at 1494.

Plaintiff argues that the ALJ should have recontacted Dr. Lautenschlager. While an ALJ is required to contact a claimant's treating physician where the evidence is insufficient, in the matter under consideration, as more fully set forth above, the ALJ had sufficient data pursuant to the reports of treating and examining medical sources upon which he could base his finding that Plaintiff was not disabled. See Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984).

**B.     Plaintiff's RFC:**

Plaintiff contends that the ALJ's determination of Plaintiff's RFC is not consistent with the Regulations and applicable law and that it is not supported by substantial evidence. The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer, 245 F.3d at 703. To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. In contrast to the first four steps of the sequential evaluation, in which the claimant carries the burden of proof, the Commissioner has the burden of establishing the claimant's RFC. See Singh, 222 F.3d at 451. Additionally,   a

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

"'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 703 (quoting Singh, 222 F.3d at 451). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace.'" (quoting Nevland, 204 F.3d at 858). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id.

The Eighth Circuit has recently held in Eichelberger v. Barnhart, 390 F.3d 584 (8th Cir. 2004), that while a claimant has the burden to establish he has a disability, it is the ALJ's role to determine a claimant's RFC. (citing Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004)). In particular, the court in Eichelberger held as follows:

> The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Id. We have held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001). "[S]ome medical evidence" must support the determination of the claimant's RFC, Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

Id. at 591.

Upon making an RFC assessment an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See id.

RFC is defined as what an individual can still do despite his or her limitations and is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that may affect his or her capacity to do work-related physical and mental activities." S.S.R.96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. At step 4, "the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." Id. At step 5, where a claimant's RFC is expressed in terms of exertional categories, it must also be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id.

The ALJ in the matter under consideration found that Plaintiff has the RFC to occasionally lift 20 pounds and to frequently lift 10 pounds and that she does not have any "credible medically-established mental or other nonexertional limitations." Based on the medical evidence as cited above, the court finds that this conclusion by the ALJ regarding Plaintiff's RFC is supported by substantial evidence and that it is consistent with the case law and Regulations. See Eichelberger, 390 F.3d at 501.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Consistent with the Regulations, only after defining Plaintiff's limitations and restrictions did the ALJ conclude that Plaintiff's restrictions do not preclude her from engaging in her past relevant work as a home health care worker. Plaintiff argues that the ALJ did not consider the requirements of her past relevant work. The record, however, includes a questionnaire in which Plaintiff reported that her work as a home health aid involved housework, patient care, shopping for what a client needed, and assisting with transferring the client to the bed, toilet, and chair. She further said in the questionnaire that the heaviest weight which this job required that she lift was twenty to fifty pounds and that it required that she frequently lift less than ten pounds. (Tr. 58). On another questionnaire Plaintiff reported that the heaviest weight she had to lift as a home health aid worker was twenty pounds. (Tr. 75). She also said that the job required that she walk, stand, sit, and handle small objects 1/2 - 4 hours and that she climb one hour. (Tr. 75).

Significantly, Light work is defined in 20 C.F.R. 404.1567(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

Thus, the court notes that Plaintiff's own description of her job as home health aid worker is consistent with light work.

If step four of the sequential process is reached, the ALJ is required to evaluate the claimant's ability to perform her past relevant work under the following guidelines:

Your impairment(s) must prevent you from doing past relevant work. If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

find that you are not disabled.

20 C.F.R. §§ 404.1520(e); 416.920(e) (1988); <u>Nimick v. Secretary of Health and Human Services</u>, 887 F.2d 864, 866 (8th Cir. 1989). The ALJ has a duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work, as well as compare that with what the claimant herself is capable of doing before the ALJ determines that claimant is able to perform past relevant work. <u>Id</u>.

The ALJ considered the definition of light work and noted that Plaintiff's own description of her past relevant work as a home health care worker was consistent with light work. (Tr. 19). The ALJ concluded, therefore, that home health care work involves work at the light level and that Plaintiff's past relevant work is not precluded by her limitations. (Tr. 19, 21). As noted by the ALJ, because he found that Plaintiff could perform her past relevant work, he was not required to make further findings. <u>See</u> 20 C.F.R. § 404.1520(f) (stating that if a claimant's RFC permits her to perform her past relevant work she is not disabled).

Alternatively, the ALJ considered that even if Plaintiff is not able to work as a home health care worker she can still perform the full range of "other work" at the light exertional level. (Tr. 21). The court finds that the ALJ's finding in this regard is consistent with the medical evidence described above and the definition of light work. Further, the ALJ concluded that even if Plaintiff cannot perform light work she is capable of performing sedentary work. 20 C.F.R. § § 404.1567(a), 416.967(a) provide that sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools. "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." <u>Id</u>. Thus, although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out the duties of a sedentary job. Therefore, to the extent that

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the ALJ did not consider the requirements of Plaintiff's past relevant work as a home health worker, because the ALJ alternatively found that she can engage in other light work and/or that she can engage in sedentary work and because his determination of her RFC is supported by substantial evidence, the court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence on the record as a whole and is consistent with the relevant evidence and the Regulations. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (holding that as long as substantial evidence exists in the record to support the Commissioner's decision, the decision cannot be reversed even if the reviewing court finds that substantial evidence "would have supported a contrary outcome" or because the reviewing court "would have decided the case differently"); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

**C.** **Consideration of Plaintiff's Credibility pursuant to Polaski:**

The ALJ found Plaintiff's subjective complaints to be not entirely credible and that Plaintiff's impairments were not as severe as she alleged. As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. See Guillams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. See Wheeler, 224 F.3d at 896 n.3; Reynolds, 82 F.3d at 258; Montgomery, 69 F.3d at 275. For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, upon considering Plaintiff's credibility the ALJ properly considered that to the extent that Plaintiff's daily activities are restricted, they are restricted by her choice and not by medical

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

prescription.  See, e.g., Gray v. Apfel, 192 F.3d 799, 804 (8th Cir. 1999); Shelton v. Chater, 87 F.3d 992, 996 (8th Cir. 1996).

Second, the ALJ considered that Plaintiff did her own cooking and laundry, although she relied on a friend to take her grocery shopping. While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo, 241 F.3d at 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy, 953 F.2d at 386; Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis, 239 F.3d at 967 (citing Benskin, 830 F.2d at 883).  The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain.  The court further finds that substantial evidence supports the ALJ's decision in this regard.

Third, the ALJ considered that there was no medically documented evidence that Plaintiff suffered pain which interfered with or diminished her ability to concentrate. A lack of objective medical evidence detracts from Plaintiff's subjective complaints. See Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (holding that while an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence) (citing 20 C.F.R. § § 416.908, 416.929); Jones, 86 F.3d at 826. The absence of

PDF created with FinePrint pdfFactory trial version   www.pdffactory.com

an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987).

Fourth, as stated above, the ALJ properly considered that Plaintiff did not seek or receive long term mental health treatment. See Rautio, 862 F. 2d at 179.

Fifth, as stated above, the ALJ properly considered Plaintiff's demeanor at the hearing. See Ward, 786 F.3d at 847-48.

Sixth, the ALJ concluded that Plaintiff had no surgery or inpatient hospitalizations. The court notes that Plaintiff testified that although she went to the emergency room in the summer of 2002 for asthma, she was not hospitalized after that time. See Rautio, 862 F. 2d at 179 (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. See Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James, 870 F.2d at 450.

Seventh, the ALJ properly considered that Plaintiff did not take strong doses of pain medication and that there was no record of adverse side effects from medications which she took. Pursuant to Polaski, 730 F.2d at 1322, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). The ALJ further considered that to the extent that Plaintiff suffered adverse side effects from medications, these were in all instances eliminated or at least greatly diminished by simple changes in the type, dosage, or frequency of the medication. The court notes that Plaintiff testified at the hearing that she takes a muscle relaxant for back pain which helps her sleep and that she uses an inhaler for her asthma. She also said

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that she uses a cream for skin lesions, although the lesions come back. As stated above, conditions which can be controlled by treatment are not disabling. See Harris v. Heckler, 756 F.2d 431, 435-36 n.2 (6th Cir. 1985). See also Murphy, 953 F.2d at 384; Warford, 875 F.2d at 673; James, 870 F.2d at 450.

## VII.
## CONCLUSION

The court finds that the decision of the ALJ is supported by substantial evidence on the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY**,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Brief in Support of Complaint is **DENIED**; [Doc. 14]

**IT IS FURTHER ORDERED** that the relief sought by Defendant in her Brief in Support of the Answer is **GRANTED**; [Doc. 15]

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED** in its entirety, with prejudice;

**IT IS FINALLY ORDERED** that a separate judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  3rd  day of  June, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

PDF created with FinePrint pdfFactory trial version [www.pdffactory.com](www.pdffactory.com)